**FILED**

LA' FEB 2 2 2007

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**JUDGE ZAGEL**

UNITED STATES OF AMERICA

v.

LUTGARDO CHAVEZ, JR.,
    aka "Lalo,"
JESUS MARIO FAJARDO-TRUJILLO,
    aka "Marito," "Mario,"
    "Mario Fajardo," and
    "Mario Fajardo-Trujillo,"
ISAIAH COLEMAN
    aka "Carlos," and "Ike,"
JIMMY DARDEN,
FELIXITO VIDANA-AISPURO,
    aka "Indio," "Felix,"
    and "Felixito Vidana,"
RICARDO VALDEZ-TORRES,
    aka "Cerebro," and "The Cooker,"
ALFREDO MOLINA-GARCIA,
    aka "Guero,"
OSCAR JACOBO RIVERA-PERALTA,
    aka "Jacobo,"
GUADALUPE MORENO-SOTO,
    aka "Tio," "Veterano," and
    "Guadalupe Moreno,"
ADRIAN CARREON,
    aka "Tortuga,"
DARNELL HURT,
    aka "D," and "Chaka,"
ANDRE RODRIGUEZ,
    aka "Dre," and
LILIANA ARRAMBIDE,
    aka "Lily"

No. 06 CR 138 **MAGISTRATE JUDGE DENLOW**

Violations: Title 21, United States Code,
Sections 841, 846 and 963; and Title 18,
United States Code Section 2.

**SUPERSEDING INDICTMENT**

## COUNT ONE

The SPECIAL DECEMBER 2005 GRAND JURY charges:

1.      Beginning no later than in or about 2001, and continuing until at least in or about May

2006, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

LUTGARDO CHAVEZ, JR.,
aka "Lalo,"
JESUS MARIO FAJARDO-TRUJILLO,
aka "Marito," "Mario," "Mario Fajardo," and "Mario Fajardo-Trujillo,"
ISAIAH COLEMAN
aka "Carlos," and "Ike,"
JIMMY DARDEN,
FELIXITO VIDANA-AISPURO,
aka "Indio," "Felix," and "Felixito Vidana,"
RICARDO VALDEZ-TORRES,
aka "Cerebro," and "The Cooker,"
ALFREDO MOLINA-GARCIA,
aka "Guero,"
OSCAR JACOBO RIVERA-PERALTA,
aka "Jacobo,"
GUADALUPE MORENO-SOTO,
aka "Tio," "Veterano," and "Guadalupe Moreno,"
ADRIAN CARREON,
aka "Tortuga,"
DARNELL HURT,
aka "D," and "Chaka,"
ANDRE RODRIGUEZ,
aka "Dre," and
LILIANA ARRAMBIDE,
aka "Lily,"

defendants herein, did conspire with each other, and with others known and unknown to the Grand

Jury, knowingly and intentionally to possess with intent to distribute and to distribute controlled

substances, namely, in excess of 5 kilograms of mixtures and substances containing a detectable

amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, in excess of 400 grams of

mixtures and substances containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-

2

4-piperidinyl] propanamide), a Schedule II Narcotic Drug Controlled Substance, and in excess of 1 kilogram of mixtures and substances containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

2.    It was part of the conspiracy that FELIXITO VIDANA, assisted by various other co-conspirators, led a drug trafficking organization (hereinafter "the organization") that obtained large quantities of cocaine, heroin and fentanyl from Mexico for resale to wholesale customers in Chicago, Illinois, Detroit, Michigan, and elsewhere.

3.    It was further part of the conspiracy that, on multiple occasions, GUADALUPE MORENO-SOTO and JESUS MARIO FAJARDO-TRUJILLO, assisted by LUTGARDO CHAVEZ, JR, ADRIAN CARREON, and various other co-conspirators, distributed and caused to be distributed wholesale quantities of cocaine and heroin on behalf of the organization to Chicago, Illinois-based co-conspirators, including LUTGARDO CHAVEZ, JR., and Detroit, Michigan-based co-conspirators, including DARNELL HURT, who was assisted by various co-conspirators, for resale to others. The cocaine and heroin was fronted to these co-conspirators with the understanding that the full purchase price would be paid later.

4.    It was part of the conspiracy that in or about 2003, RICARDO VALDEZ-TORRES, assisted by OSCAR JACOBO RIVERA-PERALTA, established a company in Mexico named Distribuidora Talios SA de CV. RICARDO VALDEZ-TORRES and OSCAR JACOBO RIVERA-PERALTA held Distribuidora Talios out to the public as a legitimate business when in fact Distribuidora Talios was a front company through which RICARDO VALDEZ-TORRES, OSCAR JACOBO RIVERA-PERALTA and Co-Conspirator A ordered chemicals and equipment to be used in the manufacture of wholesale quantities of fentanyl.

3

5.     It was further part of the conspiracy that beginning no later than in or about 2004, RICARDO VALDEZ-TORRES, OSCAR JACOBO RIVERA-PERALTA, Co-Conspirator A and Co-Conspirator B operated a laboratory in Toluca, Mexico (hereinafter "the Toluca laboratory") that was used for the manufacturing of wholesale quantities of fentanyl for distribution to others on behalf of the organization.

6.     It was further part of the conspiracy that at various times between at least 2003 and in or about May 2006, FELIXITO VIDANA-AISPURO, ALFREDO MOLINA-GARCIA and Co-Conspirator B, who was assisted by Co-Conspirator C, invested in the Toluca laboratory in order to promote the manufacturing of fentanyl for distribution to others on behalf of the organization.

7.     It was further part of the conspiracy that at various times, beginning no later than in or about the Summer of 2005, Co-Conspirator B and RICARDO VALDEZ-TORRES manufactured wholesale quantities of fentanyl at the Toluca laboratory.

8.     It was further part of the conspiracy that at various times beginning no later than in or about the Summer of 2005, Co-Conspirator B and FELIXITO VIDANA-AISPURO, assisted by ALFREDO MOLINA-GARCIA and various other co-conspirators, distributed and caused to be distributed on a fronted basis wholesale quantities of fentanyl manufactured at the Toluca laboratory on behalf of the organization to co-conspirators in the Chicago, Illinois area, including GUADALUPE MORENO-SOTO and JESUS MARIO FAJARDO-TRUJILLO.

9.     It was further part of the conspiracy that, on multiple occasions, beginning no later than in or about the Summer of 2005, GUADALUPE MORENO-SOTO and JESUS MARIO FAJARDO-TRUJILLO, assisted by various co-conspirators, distributed and caused to be distributed on a fronted basis wholesale quantities of fentanyl manufactured at the Toluca laboratory on behalf

4

of the organization to Chicago, Illinois-based co-conspirators, including LUTGARDO CHAVEZ, JR. and other co-conspirators, and to Detroit, Michigan-based co-conspirators, including DARNELL HURT, who was assisted by various co-conspirators, for resale to others.

10.     It was further part of the conspiracy that, on multiple occasions, beginning no later than in or about the Fall of 2005, LUTGARDO CHAVEZ, JR. distributed on a fronted basis wholesale quantities of fentanyl manufactured at the Toluca laboratory and wholesale quantities of cocaine to ISAIAH COLEMAN, who was assisted by JIMMY DARDEN.

11.     It was further part of the conspiracy that, on multiple occasions, beginning no later than in or about the Fall of 2005, ISAIAH COLEMAN, assisted by JIMMY DARDEN, distributed on a fronted basis wholesale quantities of fentanyl manufactured at the Toluca laboratory to customers in the Chicago, Illinois area and elsewhere, including members of the Mickey Cobras street gang and their associates.

12.     It was further part of the conspiracy that at various times beginning no later than in or about the Fall of 2005, LILIANA ARRAMBIDE permitted LUTGARDO CHAVEZ, JR. to mix and store in her residence in Chicago, fentanyl manufactured at the Toluca laboratory and heroin. LILIANA ARRAMBIDE further permitted LUTGARDO CHAVEZ, JR. to transfer shipments of illegal narcotics at her residence.  LLILIANA ARRAMBIDE also stored in her residence cash proceeds from LUTGARDO CHAVEZ JR.'s sale of illegal narcotics.

13.     It was further part of the conspiracy that beginning no later than in or about September 2005, ANDRE RODRIGUEZ provided CHAVEZ with a 1991 Honda Accord containing a trap compartment for use by LUTGARDO CHAVEZ, JR. in storing and transporting illegal narcotics.

14.     It was further part of the conspiracy that certain defendants regularly used cellular telephones and land-line telephones to facilitate their drug transactions.

15.     It was further part of the conspiracy that the defendants and other co-conspirators would and did conceal and hide, and cause to be concealed and hidden, the purposes of the acts done in furtherance of the conspiracy, and would and did use coded language, surveillance and counter-surveillance techniques, and other means to avoid detection and apprehension by law enforcement authorities and otherwise to provide security to members of the conspiracy;

All in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

6

## COUNT TWO

The SPECIAL DECEMBER 2005 GRAND JURY further charges:

Beginning no later than the Summer of 2005, and continuing until at least in or about May 2006, in the Northern District of Illinois, Eastern Division, and elsewhere,

JESUS MARIO FAJARDO-TRUJILLO,
aka "Marito," "Mario," "Mario Fajardo," and "Mario Fajardo-Trujillo,"
FELIXITO VIDANA-AISPURO,
aka "Indio," "Felix," and "Felixito Vidana,"
RICARDO VALDEZ-TORRES,
aka "Cerebro," and "The Cooker,"
ALFREDO MOLINA-GARCIA,
aka "Guero,"
OSCAR JACOBO RIVERA-PERALTA,
aka "Jacobo," and
GUADALUPE MORENO-SOTO,
aka "Tio," "Veterano," and "Guadalupe Moreno,"

conspired with each other and with others known and unknown to the Grand Jury to import into the United States from a place outside the United States, namely Mexico, a controlled substance, namely, in excess of 400 grams of mixtures and substances containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 952(a);

All in violation of Title 21, United States Code, Section 963, and Title 18, United States Code, Section 2.

7

## COUNT THREE

The SPECIAL DECEMBER 2005 GRAND JURY further charges:

On or about September 29, 2005, in the Northern District of Illinois, Eastern Division, and elsewhere,

### LUTGARDO CHAVEZ, JR.,

defendant herein, knowingly and intentionally distributed a controlled substance, namely, in excess of 500 grams of mixtures containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1).

8

## COUNT FOUR

The SPECIAL DECEMBER 2005 GRAND JURY further charges:

On or about September 29, 2005, in the Northern District of Illinois, Eastern Division, and elsewhere,

### JIMMY DARDEN,

defendant herein, knowingly and intentionally possessed with intent to distribute a controlled substance, namely, in excess of 500 grams of mixtures containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1).

9

## FORFEITURE ALLEGATION

The SPECIAL DECEMBER 2005 GRAND JURY further charges:

1.     The allegations of Counts One and Two of this Indictment are realleged and incorporated herein by reference for the purpose of alleging that certain property is subject to forfeiture to the United States, pursuant to the provisions of Title 21, United States Code, Section 853.

2.     As a result of their respective violations of Title 21, United States Code, Sections 846, 841(a)(1) and 963, as alleged in the foregoing Indictment,

LUTGARDO CHAVEZ,
aka "Lalo,"
JESUS MARIO FAJARDO-TRUJILLO,
aka "Marito," "Mario," "Mario Fajardo," and "Mario Fajardo-Trujillo,"
ISAIAH COLEMAN
aka "Carlos" and "Ike,"
JIMMY DARDEN,
FELIXITO VIDANA-AISPURO,
aka "Indio," "Felix," and "Felixito Vidana,"
RICARDO VALDEZ-TORRES,
aka "Cerebro," and "The Cooker,"
ALFREDO MOLINA-GARCIA,
aka "Guero,"
OSCAR JACOBO RIVERA-PERALTA,
aka "Jacobo,"
GUADALUPE MORENO-SOTO,
aka "Tio," "Veterano," and "Guadalupe Moreno,"
ADRIAN CARREON,
aka "Tortuga,"
DARNELL HURT,
aka "D," and "Chaka,"
ANDRE RODRIGUEZ,
aka "Dre," and
LILIANA ARRAMBIDE,
aka "Lily,"

defendants herein, shall forfeit to the United States, pursuant to Title 21, United States Code, Section

10

853(a)(1) and (2): (1) any and all property constituting and derived from, any proceeds they obtained, directly and indirectly, as a result of the violations of Title 21, United States Code, Sections 846, 841(a)(1) and 963; and (2) any and all of property used, or intended to be used, in any manner or part, to commit and facilitate the commission of the violation of Title 21, United States Code, Sections 846, 841(a)(1) and 963.

3.     The interests of the defendants subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 853 include, but are not limited to, the following::

   a.     $12,000,000 in United States Currency, representing the estimated proceeds of the narcotics distribution organization;

4.     If any of the property described above as being subject to forfeiture pursuant to Title 21, United States Code, Section 853(a), as a result of any act or omission of the defendants:

   a.     cannot be located upon the exercise of due diligence;

   b.     has been transferred to, sold to, or deposited with a third person;

   c.     has been placed beyond the jurisdiction of the Court;

   d.     has been substantially diminished in value;

   e.     has been commingled with other property which cannot be subdivided without difficulty;

11

it is the intent of the United States to seek forfeiture of substitute property belonging to defendants

under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18,

United States Code, Section 982(b)(1);

All pursuant to Title 21, United States Code, Section 853.

A TRUE BILL:

_____
FOREPERSON


_____
UNITED STATES ATTORNEY

12